**SO ORDERED.**

**SIGNED this 17 day of May, 2006.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WILMINGTON DIVISION

IN RE:

**DENNIS MUGNO,**

      Debtor.                                                                                     Case No. 05-09231-8-JRL
                                                                                                         Chapter 13

_____

## ORDER

      This matter is before the court on the former Chapter 7 trustee's motion to reconvert. On May 2, 2006, the court conducted a hearing in Wilmington, North Carolina.

### Background

      On January 27, 2005, the debtor and his fiancee, Terri Yodice, met with Bradford Sanders, an attorney with the law firm of Butler & Butler, L.L.P. ("Butler & Butler") for an initial consultation. The debtor did not ultimately retain the services of Mr. Sanders. On October 13, 2005, the debtor filed a Chapter 7 petition and the court appointed Algernon L. Butler, III of Butler & Butler as the trustee in the case. Due to an apparent conflict of interest, Mr. Butler rejected his appointment and James B. Angell was subsequently appointed as trustee.

After reviewing Mr. Sanders' notes from his meeting with the debtor, Mr. Butler informed Mr. Angell of his belief that the debtor provided funds to Myrtle Carter, his fiancee's mother, for the purchase of real property in Wilmington, North Carolina (the "Wilmington property"). The debtor and his fiancee currently live on the property as it was transferred to Ms. Yodice on June 3, 2005 by quitclaim deed for no consideration. Mr. Angell subsequently filed a motion for a Rule 2004 examination of Jeff Porter, the attorney who closed the sale of the property to Mrs. Carter, and it was granted.

Mr. Angell discovered through Mr. Porter's documents that a down payment was made on the Wilmington property in the form of a certified check dated September 22, 2004 in the amount of $43,270.84. On the same date, funds in the amount of $43,270.84 were withdrawn from a savings account at First Citizens Bank in the name of Brianna Mugno, the debtor and Ms. Yodice's minor child. Ms. Yodice has admitted that the funds withdrawn from the savings account were used for the down payment but testified that the funds did not belong to the debtor. Ms. Yodice asserted that she provided her mother with the down payment, using funds from a divorce settlement, the sale of real property in Myrtle Beach, South Carolina, and proceeds from her father's life insurance policy.

Upon further review of public records, Mr. Angell also discovered that the debtor had misrepresented the sale of his real property in Suffolk County, New York. At his meeting of creditors, the debtor testified under oath that the sale took place in 2002 for $275,000 and after satisfying the existing mortgage and tax liens, he received $20,000 from the sale. The public records of Suffolk County show that the sale occurred on July 29, 2004 and the purchase price was $381,000. A preliminary HUD-1 settlement statement obtained from the closing attorney in New York indicates that a check was issued from the proceeds to the debtor in the amount of $62,204.83. At the hearing, the debtor testified that he

cashed this check and used $40,000 to pay off gambling debts. The remaining funds were allegedly used for living expenses. The debtor contends that he was mistaken about the terms of the New York sale at his meeting of creditors but he did not provide funds to Mrs. Carter or Ms. Yodice for the purchase of the Wilmington property.

## Procedural History

On January 30, 2006, Mr. Angell, in his capacity as the Chapter 7 trustee, filed a complaint against the debtor seeking to deny his discharge for failure to keep adequate records. On January 31, 2006, the debtor filed motions for Rule 2004 examinations of Mr. Angell and Mr. Butler. The court denied the debtor's motions in an order dated February 28, 2006 on the basis that the examinations would have no effect on the administration of the bankruptcy estate.

On February 21, 2006, the debtor filed a motion to convert the case to Chapter 13. An order granting the motion was entered and on February 24, 2006, Mr. Angell filed a motion to reconvert the case to Chapter 7, asserting that the debtor had no disposable income to fund a Chapter 13 plan and his resort to Chapter 13 was an abuse of process.[1] Mr. Angell also sought the enforcement of Rule 2004 orders addressed to Ms. Yodice and Mrs. Carter.[2]

At the initial hearing on the motion to reconvert,[3] the debtor objected to the testimony of

---

[1] The former Chapter 7 trustee seeks reconversion under § 105(a), a provision that is the "basis for a broad exercise of power in the administration of a bankruptcy case." Kestell v. Kestell (In re Kestell), 99 F.3d 146, 148 (4th Cir. 1996). The court will utilize a more precise analysis under 11 U.S.C. § 1307(c) in determining whether a case should be involuntarily reconverted.

[2] The court entered orders on February 14, 2006 granting the Chapter 7 trustee's motions for examination of documents addressed to Ms. Yodice and Mrs. Carter.

[3] The court conducted the first hearing on March 15, 2006.

3

Bradford Sanders on the basis of attorney-client privilege. In order to determine the nature of the debtor's initial consultation at Butler & Butler, the court heard Mr. Sanders' testimony. In an order dated March 23, 2006, the court made an interim ruling that Ms. Yodice's presence at the debtor's initial consultation waived attorney-client privilege. The court deferred ruling on the motion to reconvert to allow Mr. Angell and the debtor to gather relevant documentation. Butler & Butler was directed to turn over Mr. Sanders' handwritten notes from his consultation with the debtor to Mr. Angell. The court also enforced the subpoena for documents addressed to Mrs. Carter and Ms. Yodice and directed the debtor to file amended Schedules I and J, a proposed Chapter 13 plan, and comply with Mr. Angell's requests for discovery before the next hearing.[4]

On April 4, 2006, Mr. Angell filed a motion to compel the debtor to comply with the court's order, asserting that the debtor failed to provide complete responses to his requests for documents. Specifically, Mr. Angell sought an order compelling the debtor to provide documents relating to the sale of the New York property and loans on his life insurance policy. The debtor responded that he provided his life insurance information to Mr. Angell's attorney and he no longer possessed the closing documents from New York. On April 13, 2006, Mr. Angell also filed a motion for show cause order alleging that Ms. Yodice and Mrs. Carter failed to fully provide documents specified in the court's Rule 2004 orders and subpoenas. On April 24, 2006, the court granted the motion for show cause.

## Analysis

The Fourth Circuit has held that a debtor has a "one-time absolute right" to convert a case under

---

[4] Additionally, the court enforced the subpoena for documents addressed to First Citizens Bank, Liberty Tax Service, and 4-2003, LLC.

11 U.S.C. § 706(a). In re Finney, 992 F.2d 43, 45 (4th Cir. 1993). The case "may always be reconverted to Chapter 7" based on the "debtor's bad faith." Pequeno v. Schmidt, 307 B.R. 568, 580 (S.D. Tex. 2004). Section 1307(c) provides that "on request of a party in interest or the United States trustee and after notice and hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1307(c) (2005). The term, "cause" includes factors listed in § 1307(c), "as well as filing a bankruptcy petition in bad faith." In re Trexler, Case No. 02-04126-W, 2002 Bankr. LEXIS 1818 (Bankr. D.S.C. Oct. 22, 2002).

The determination of whether a petition was filed in bad faith requires an examination of the "totality of the circumstances," specifically "(1) whether the debtor stated debts and expenses accurately, (2) whether the debtor made any fraudulent representation to mislead the court, and (3) whether the debtor unfairly manipulated the Bankruptcy Code." Id.; Molitor v. Eidson (In re Molitor), 76 F.3d 218, 221-22 (8th Cir. 1996); In re Johnson, 228 B.R. 663, 668 (Bankr. N.D. Ill. 1999).

The bankruptcy court in Trexler found that a "debtor's prepetition conduct" and "honesty in representing facts" were important in determining whether the debtor filed his petition in bad faith. In re Trexler, 2002 Bankr. LEXIS 1818 *9. The debtor in that case successfully sought to convert his case from Chapter 7 to Chapter 13, resulting in his creditors filing a motion to reconvert. Id. at *1. The creditors argued that the debtor's plan was not feasible and his case was filed in bad faith.

The bankruptcy court granted the creditors' motion, finding that the debtor had acted "evasively and inconsistently regarding his interest" in a limited liability corporation. Id. at *10. He was also inconsistent with regard to his monthly income and transfers from a corporation to his family. The court

5

found that potentially fraudulent transfers under § 548 were "an additional ground for reconverting Debtor's bankruptcy case to Chapter 7." Id. at *13.

The facts of this case also indicate a pattern of evasiveness and inconsistency. The bad faith aspects of the debtor's case center around the sale of his property in New York and the subsequent purchase of the Wilmington property by Mrs. Carter. It has been established that the debtor seriously misrepresented to the trustee the date of the New York sale, the purchase price and the amount that the debtor received from the sale. Of the funds the debtor received at the closing, he asserts that $40,000 was paid to satisfy gambling debts after his life was allegedly threatened. Only two months later, Mrs. Carter purchased the Wilmington property with a down payment of $43,270.84 from the bank account of Brianna Mugno, the debtor's child. The court gave the debtor an opportunity to present documentary evidence that he did not provide the funds for the down payment; however, no such evidence was produced.

In the absence of credible evidence that the debtor did not provide the down payment, the court turns to Mr. Sanders' notes and testimony. At the hearing, Mr. Angell introduced into evidence the notes taken by Mr. Sanders at his initial consultation with the debtor. The notes indicate that the debtor provided "$40,000 on house in fiancee's mother's name back in September." Mr. Sanders previously testified that based on this transfer of funds to Mrs. Carter, he advised the debtor not to file a petition under Chapter 13. Mr. Sanders informed the debtor that he would have to disclose the transfer to the Chapter 13 trustee and the debtor's interest in the property would be included in the bankruptcy estate. Mr. Sanders' testimony has not been impeached and establishes by a preponderance of the evidence that the transaction occurred.

6

Mr. Angell also presented evidence at the hearing that the debtor made fraudulent transfers prior to filing his petition. The debtor testified that upon moving to North Carolina in July of 2004, he worked for Wilmington Hyundai as a salesman. His salary was directly deposited into Ms. Yodice's First Citizens account on a weekly basis, beginning on April 26, 2005. The debtor acknowledged that he used Ms. Yodice's account to prevent creditors from seizing his funds. Mr. Angell admitted into evidence a letter from Ms. Yodice indicating that the only funds deposited into that account were from Wilmington Hyundai.

The debtor failed to disclose his interest in the Wilmington property, attempted to mislead the court with regard to that transaction, and made potentially fraudulent transfers to Ms. Yodice in the form of direct deposits. His conduct warrants a finding of bad faith sufficient to constitute "cause" under § 1307(c).[5]

### Conclusion

Based on a preponderance of the evidence, the court finds that cause exists to reconvert the debtor's case to Chapter 7. As a result of the Wilmington property transaction, there are funds under the liquidation test that are not accounted for in the debtor's proposed Chapter 13 plan and could not be feasibly accounted for under the debtor's amended Schedule J. Accordingly, the motion to reconvert is granted. Based on their testimony at the hearing, the show cause order against Mrs. Carter and Ms. Yodice is dismissed. The motion to compel the debtor to comply with the court's previous order is

---

[5] The debtor also meets the third factor listed in § 1307(c), as he had missed two monthly Chapter 13 plan payments as of the date of the hearing. Although he tendered payment to the Chapter 13 trustee at the hearing, he was asked to send it to the trustee's office. See 11 U.S.C. § 1307(c)(3) (2005).

denied. The order in question required the debtor to provide documents to the former Chapter 7 trustee in preparation for the final hearing on the motion to reconvert; and therefore, the motion is moot.

"End of Document"